IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00335-RM-KLM

OPTIV SECURITY, INC., a Delaware Corporation,

     Plaintiff,

v.

DEFINITION 6, LLC, a Georgia Limited Liability Company,

     Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Second Claim Pursuant to Fed. R. Civ. P. 12(b)(6)** [#11][1] (the "Motion"). Plaintiff filed a Response [#16] in opposition to the Motion, and Defendant filed a Reply [#20]. The Motion has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#33]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#11] be **DENIED**.

## I. Background

---

[1] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Plaintiff alleges the following facts as the basis for its claims.[2] Plaintiff is a cyber security firm that hired Defendant to build a new website for Plaintiff's company pursuant to two interrelated agreements: (1) an October 25, 2017 Vendor Services Agreement ("VSA"), and (2) an April 26, 2018 Phase I Website Build Memorandum of Engagement ("MOE") (collectively, "the Agreement"). *Compl.* [#3] ¶¶ 6-7; *see Def.'s Ex. A, VSA* [#18-2]; *Def.'s Ex. B, MOE* [#19].[3]  Pursuant to the Agreement, Defendant was to design, test, provide quality assurance for, and deploy the website with new "advanced marketing functionality." *Compl.* ¶¶ 9, 13.  Defendant represented to Plaintiff that the website would be launched between April 2018 and June 2018 at the latest. *Id.* ¶ 17.  Plaintiff generally alleges that, despite already paying Defendant over $175,000, Defendant repeatedly failed to provide an adequately functional product within the agreed upon time frame. *Id.* ¶¶ 10, 19.

Specifically, Plaintiff contends that Defendant failed to meet the June 2018 deadline as a result of "numerous breaches of contract" including, among others: (1) Defendant's "unilateral introduction of changes to the website to which [Plaintiff] did not agree"; (2)

---

[2]  All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[3] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, "[n]otwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. V. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Here, the VSA and MOE are central to Plaintiff's claims and are specifically referred to in the Complaint [#3].  Defendant has submitted copies of the VSA and MOE in connection with the instant Motion [#11] and there is no indication on the record that Plaintiff disputes their authenticity. *See Def.'s Ex. A, VSA* [#18-2]; *Def.'s Ex. B, MOE* [#19].  Therefore, the Court considers the VSA and MOE for the purposes of this Recommendation.

Defendant's "failure to complete tasks specifically required by the MOE"; (3) Defendant's "delivery of incomplete and deficient templates, which often required [Plaintiff's] employees to redo [Defendant's] work, in many cases multiple times because [Defendant] often deleted the work previously corrected by [Plaintiff]"; and (4) Defendant's "repeated failure to deliver basic and industry standard website functions, let alone the contracted advanced functions." *Id.* ¶ 11.

In sum, Plaintiff alleges that Defendant "failed to deliver the content and capabilities agreed to as the 'outcome' of the Phase 1 development of the website." *Id.* ¶ 19. As a result, Plaintiff states that it has "incurred significant internal and external costs in efforts to address the deficiencies in [Defendant's] work, is now required to engage a new vendor (at an estimated cost of at least $92,000) to complete the work within the scope of the Agreement, and has incurred substantial damages resulting from loss of business due to the delays and deficiencies in [Defendant's] work." *Id.*

On these factual allegations, Plaintiff filed its Complaint [#3] against Defendant in Denver District Court on November 13, 2018. Defendant removed the action to this Court on February 8, 2019. *Notice of Removal* [#1]. In the Complaint, Plaintiff asserts two claims for relief. The first claim is for breach of contract, in which Plaintiff alleges that "[Defendant] failed and refused to honor its contractual obligation to complete the design and development of a working website" consistent with the MOE. *Id.* ¶ 24. Pursuant to this claim, Plaintiff seeks damages in the amount already paid to Defendant and attorneys' fees. *Id.* ¶¶ 25-26. The second claim is for "indemnification," in which Plaintiff alleges that, as a result of Defendant's breach, Plaintiff has suffered losses in the form of employee costs, the cost of unusable software purchased in anticipation of the website, anticipated costs

of hiring a new website developer, and loss of business. *Id.* ¶ 30. Plaintiff asserts that, under the VSA's indemnification provision, Defendant is obligated to pay for such costs as a result of its breach. *Id.* ¶ 31; *see VSA* [#18-2] § 8. Although the second claim is titled "indemnification," Plaintiff notes in its Response to the present Motion [#11] that both claims are premised on Defendant's purported breaches of contract. *See Response* [#16] at 5.

Defendant filed the instant Motion [#11] on February 15, 2019, in which it only seeks to dismiss Plaintiff's second claim pursuant to Fed. R. Civ. P. 12(b)(6). In short, Defendant argues that Plaintiff's claim for indemnification "should be dismissed because [Plaintiff] has failed to plead its special damages with the requisite specificity." *Motion* [#11] at 2. Defendant further asserts that "[Plaintiff] cannot remedy its pleading deficiency by amendment because, as a matter of law, the purported lost profits [Plaintiff] seeks to recover under its Second Claim are consequential damages – a remedy expressly prohibited under the Agreement." *Id.*

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a

complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

The Court notes at the outset that contract interpretation is a matter of state law. *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015).  The parties appear to agree that Colorado law is controlling, pursuant to the VSA.  *See Motion* [#11] at 4 n.2; *Response*

[#16] at 8 (applying Colorado state law); *VSA* [#18-2] § 14 (specifying that its interpretation is governed by Colorado state law). Accordingly, to the extent interpretation of the VSA is required, the Court applies Colorado law. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). Two primary issues are brought before the Court by Defendant's Motion [#11]: First, whether Plaintiff has pleaded its claim for lost profits with sufficient specificity, and second, whether Plaintiff may assert a first-party indemnification claim under the VSA.

**A.     Failure to Plead Special Damages**

Plaintiff's indemnification claim seeks to recover, in part, "loss of business as a result of decreased conversion rate and volume from website." *Compl.* [#3] ¶ 30. Plaintiff acknowledges that this is a request for lost profits. *Response* [#16] at 4. "The general rule in Colorado is that damages for lost profits may be awarded in breach of contract cases." *Denny Const., Inc. v. City & Cty. Of Denver*, 199 P.3d 742, 746 (Colo. 2009). However, Defendant argues that Plaintiff's claim for lost profits is a request for special damages and is therefore subject to Rule 9(g)'s heightened pleading standard which requires that special damages "be specifically stated." Fed. R. Civ. P. 9(g); *Motion* [#11] at 4. Defendant contends that Plaintiff's indemnification claim fails to meet that heightened standard and, as a result, should be dismissed. *Motion* [#11] at 5.

In the context of breach of contract, the question of whether lost profits are special damages has not been definitively answered. Special damages depend on the particularities of the case, whereas general damages are the ordinary result of the alleged

breach.  *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1266 (10th Cir. 2007).  In *Weyerhaeuser*, lost profits were categorized as special damages in the context of a claim for trespass.  *Id.*  The court reasoned that lost profits depend on "circumstances unrelated to the trespass," not injury to the land itself and thus, were not an ordinary result of the wrongdoing.  *Id.*  However, in a breach of contract context, it is less clear when lost profits are the ordinary result of breach.  When interpreting a limitation of liability provision in a different case, the Tenth Circuit held that lost profits can be either consequential or direct damages, depending on whether they were contemplated by the parties.[4]  *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.* 841 F3.d 827, 839 (10th Cir. 2016).

Here, Defendant summarily concludes, in a single sentence, that Plaintiff's alleged lost profits are special damages, relying on *Weyerhaeuser* for support.  *Motion* [#11] at 4.  However, that case is distinguishable in that the damages alleged there were clearly not an ordinary result of the alleged trespass.  Moreover, in line with *SOLIDFX*, it is not obvious that Plaintiff's lost profits are outside the ordinary result of Defendant's alleged breach, and Defendant has provided no argument that they are.  Therefore, the Court is unconvinced that Plaintiff's damages are necessarily special damages, or that Plaintiff should be held to the heightened Rule 9(g) pleading standard.

Even if Plaintiff's lost profits are special damages, Defendant has failed to show that Plaintiff has not pled them with sufficient specificity.  Defendant relies on *General Steel Domestic Sales, LLC v. Chumley* to conclude that Plaintiff has not adequately pled its lost

---

[4] The terms "special damages" and "consequential damages" are usually synonymous in breach of contract cases.  *See* 3 Dan B. Dobbs, *Law of Remedies* § 12.2(3), at 38 (2d ed. 1993) ("[S]pecial damages [are] also referred to as consequential damages and the terms are used interchangeably.").  As are "general damages" and "direct damages."  *Damages* Black's Law Dictionary (10th ed. 2014) (referring "direct damages" to "general damages").

profits.  *Motion* [#11] at 5.  However, in that case, special damages were a necessary element of the plaintiff's commercial disparagement claim.  No. 10-cv-01398-PAB-KLM, 2011 WL 2415167, at *2 (D. Colo. June 10, 2011).[5]   That is, in a commercial disparagement context, "[i]f a plaintiff cannot show special damages, no cause of action is established." *Id.* (quoting *Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1167 (Colo. App. 1989)).  Normally, when special damages are not an element, but merely sought in addition to the plaintiff's claim for general damages, Rule 9(g) works to ensure that the defendant has notice of the "unusual damages being sought by virtue of their alleged wrongdoing." *DerKevorkian v. Lionbridge Technologies, Inc*, No. 04-cv-01160-LTB-CBS, 2006 WL 197320, at *4 (D. Colo. Jan. 26, 2006); *see also* 5a Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1311 (4th ed. 2008) ("A strict approach to the application of Rule 9(g) has little justification when special damages are sought simply as a supplement to the plaintiff's general damages, as long as the pleading has satisfied the rule's underlying notice function.")*.*

Unlike a commercial disparagement claim, specific damages do not need to be pled to assert a valid breach of contract claim in Colorado.  *See generally Hemmann Mgmt. Servs v. Mediacell, Inc.*, 176 P.3d 856 (Colo. App. 2007) (holding that breach of contract was sufficiently claimed when the complaint asserted that a contract existed, the plaintiff performed, the defendant failed to perform, and the failure resulted in damages).  Because

---

[5]   A commercial disparagement claim requires that a plaintiff establish the following elements: "(1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's business in general, to the title to his property, or its quality; (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages." *Gen. Steel Domestic Sales, LLC*, 2011 WL 2415167, at *2 (quoting *Teilhaber Mfg. Co.*, 791 P.2d at 1166).

a party may state a valid claim for breach of contract by alleging general or special damages, an allegation of special damages is not necessary, and heightened pleading is not required.  Thus, Plaintiff's indemnification claim, based upon breach of contract, should be held to a notice standard.  Notice of the damages being sought has clearly been given, evident from the factual allegations in the Complaint (due to "the loss of business as a result of decreased conversion rate and volume from website") and the specific amount requested.  [#3] ¶ 30.  Therefore, even if Plaintiff's lost profits are special damages, the Court finds that Plaintiff has pleaded them with sufficient specificity.

Finally, even if the Court were to find that Plaintiff's claim for lost profits seeks special damages which have not been specifically stated, it is unclear why the entirety of the second claim should be dismissed.  Again, special damages are not required to assert a valid breach of contract claim.  Where special damages are sought as relief for an alleged breach of contract, courts have dealt with the adequacy of the claim and the plaintiff's ability to recover special damages separately.  *See Derkevorkian*, 2006 WL 197320, at *5 (holding that the plaintiff "adequately asserted . . . a breach of contract claim cognizable under Colorado law," but was precluded from seeking her special damages for failing to specifically plead them).  Here, Defendant has failed to cite any authority to support the proposition that dismissal of a claim is required pursuant to Rule 9(g) where special damages are not an element of the claim.

For the foregoing reasons, the Court recommends that the Motion [#11] be **denied** to the extent that it seeks to dismiss Plaintiff's indemnification claim for failure to plead special damages with adequate specificity.

**B.     First-Party Indemnification**

The parties disagree on whether the VSA allows for first-party indemnification claims. Defendant's principal argument is that the indemnification provision does not permit first-party indemnification because if it did, then the language of the limitation of liability would be rendered meaningless. *See Motion* [#11] at 7. In opposition, Plaintiff contends that the language in the provision is broadly defined, and that there is nothing in the contract precluding first-party claims. *See Response* [#16] at 2. To resolve this dispute, the Court first looks to the plain language of the provision, enforcing it as written in the absence of any ambiguity. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).

The relevant language of the VSA is as follows:

**8. Indemnification.** [Defendant] will indemnify, protect, defend and hold harmless [Plaintiff] and [Plaintiff]'s affiliates, shareholders, directors, officers, employees and agents (collectively, "Indemnified Parties") from and against, and to [sic] reimburse the Indemnified Parties for, any and all claims, obligations, liabilities, damages, losses, costs and expenses (including without limitation attorneys' fees and expenses) (collectively, "Damages") arising from, resulting from or relating to any breach, deficiency, inaccuracy or inadequacy of or in any obligation, covenant, representation or warranty by [Defendant] or its employees, subcontractors or agents in this Agreement, any failure by [Defendant] . . . to perform any obligation or covenant required by this Agreement, or any act or omission of [Defendant] or its employees, subcontractors or agents. In addition, [Defendant] agrees to indemnify, protect, defend, and hold harmless [Plaintiff] from and against any Damages arising from, resulting from or in any way relating to any claim, allegation, lawsuit, action, finding, determination or ruling . . . that [Defendant's] or it employees', subcontrators' [sic] or agents' work, Services or Deliverables violates the rights of any third party, including without limitation any claims of patent infringement and other intellectual property infringement.

**9. Limitation of Liability.** EXCEPT FOR AN INDEMNIFICATION CLAIM, NEITHER PARTY WILL BE LIABLE FOR ANY LOSS OF USE, INTERRUPTION OF BUSINESS, LOST PROFITS, OR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND REGARDLESS OF THE CAUSE OF ACTION WHETHER IN CONTRACT . . . OR OTHERWISE, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

*VSA* [#18-2] §§ 8, 9.   Defendant contends that if first-party indemnification claims are permitted under the indemnification provision, then the exception in the limitation of liability would only apply to Plaintiff, which plainly contradicts the meaning of "neither party."  *Reply* [#20] at 4.

In Colorado, indemnity agreements are "subject to the same rules of construction which govern contracts generally."  *See May Dep't Stores Co. v. Univ. Hills, Inc.* 824 P.2d 100, 101 (Colo. App. 1991).   Thus, the Court will enforce the VSA as written if it is unambiguous.  *Allen*, 71 P.3d at 378.   A provision is ambiguous if it is "reasonably susceptible to more than one interpretation" on its face.   *Id.*  The Court also looks to the contract as a whole, interpreting it such that the entirety is given force and no provision is rendered meaningless.  *May Dep't Stores Co.* 824 P.2d at 100.

As an initial matter, the Court notes that Colorado case law does not specifically forbid first-party indemnification provisions in contracts.  Nonetheless, Defendant urges the Court not to infer such indemnity.  Defendant relies on *Luna v. American Airlines*, 769 F. Supp. 2d 231 (S.D.N.Y. 2011), and *MVW Management, LLC v. Regalia Beach Developers, LLC*, 230 So. 3d 108 (Fla. Dist. Ct. App. 2017),  in support of the proposition that courts may not infer first-party indemnification unless the provision clearly and unambiguously shows such an intent by the parties.  *See Motion* [#11] at 9.  Aside from the fact that neither case applies Colorado contract law, they also do not oppose the proposition that first-party indemnification may be inferred in borderline cases.  *Luna* even expressly acknowledges that first-party indemnity can, and has been, inferred in instances where the provision uses general language at first, then offers narrower language contemplating third parties later.  *Luna*, 769 F. Supp. 2d 231, 244 (S.D.N.Y. 2011).   Moreover, Plaintiff has offered an

abundance of persuasive authority, including Second, Fifth, Seventh, and Eighth Circuit decisions, recognizing first-party indemnification claims. *Response* [#16] at 5-7 (citing *Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 244 (5th Cir. 2011); *Broaddus v. Shields*, 665 F.3d 846, 856 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Praetorian Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 516 (8th Cir. 2010); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 171 (2d Cir. 2005)). Accordingly, the Court is satisfied that, should it be clear and unambiguous, the indemnification provision of the VSA may provide for first-party claims.

The VSA's indemnification provision unambiguously allows for first-party claims. The provision, while stated under one section entitled "indemnification," is divided into two sentences repeating much of the same language. *See VSA* [#18-2] § 8. The first sentence makes no mention of third parties and uses terms such as "indemnify" and "hold harmless," which taken together indicate a standard indemnity agreement. *Id.* ("[Defendant] will indemnify . . . and hold harmless [Plaintiff] and [Plaintiff]'s affiliates . . . from and against . . . any and all claims, obligations, liabilities, damages, losses, costs and expenses . . . arising from, resulting from or relating to any breach . . . by [Defendant.]"). On the other hand, the second sentence begins with nearly identical language, the only difference being that the second sentence explicitly references third parties. *Id.* ("In addition, [Defendant] agrees to indemnify . . . and hold harmless [Plaintiff] from and against any Damages arising from . . . any claim, allegation, lawsuit, action, finding, determination or ruling . . . that [Defendant's] or it employees' . . . work, Services or Deliverables violates the rights of any third party[.]").

The purpose of the second sentence must be to add something different from what

the first sentence already establishes, otherwise it would be pointlessly repetitive. Regardless of the standard language, if the first sentence did in fact only apply to third parties, the protection from third-party claims expressed in the second sentence would be simply redundant. Nothing new would be added, and the second sentence would only exist to waste space—it would be meaningless. Additionally, the language used in the first sentence of the provision is not so narrowly defined as to only contemplate third-party indemnification claims. *See Indemnification*, Black's Law Dictionary (10th ed. 2014) ("The action of compensating for loss or damage sustained"); *Hold Harmless*, Black's Law Dictionary (10th ed. 2014 ("To absolve (another party) from any responsibility for damage or other liability arising from the transaction"). Therefore, although the provision uses language which might give the impression that it is a standard third-party indemnification agreement, that language certainly does not apply to third parties exclusively, and in order to fully enforce the provision, it must apply to first-party claims as well. *See Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001) ("The court's duty is to interpret and enforce contracts as written, not to rewrite or restructure them.").

Just as the VSA's indemnification provision must be interpreted to give it meaning in its entirety, doing so must not diminish the force of any other section. On this point, the Court disagrees with Defendant's argument that, by permitting first-party indemnification claims, the indemnification provision renders meaningless or contradicts the limitation of liability's clause that "neither party will be liable for [certain consequential damages]... ." *VSA* [#18-2] § 9. Nor is the Court convinced that the remedy for this supposed contradiction is to construe the indemnification provision as only permitting third-party indemnification claims. For instance, assuming *arguendo* that the indemnification provision

-13-

only permits third-party indemnification claims, this would not change the fact that Plaintiff and its affiliates, as the "Indemnified Parties," are the *only* parties Defendant promises to indemnify.   Therefore, regardless of whether the claim is for third-party or first-party indemnification, if an indemnification claim is asserted, the "neither party" clause effectively applies to Defendant only.   *See Ctr. for Legal Advocacy v. Bicha*, No. 11-cv-02285-NYW, 2018 WL 5892669, at *8 (D. Colo. Nov. 9, 2018) ("'[T]he meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation' so as to harmonize all provisions." (quoting *Fed. Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013))).   The clause could only be construed otherwise if both Plaintiff and Defendant were "Indemnified Parties," which is clearly not the case.   While it may not have been the best deal for Defendant, the Court will not disregard, delete, or rewrite an entire indemnification claim on the basis that it only applies to one party.   *See Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) ("Contracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves[,]" including "mutually bargained-for duties and risks." (internal quotation marks and citations omitted)).

Further negating Defendant's argument that the term "neither party" lacks meaning, are those instances where the limitation of liability provision does have full force and effect. Again, the indemnification agreement provides that "[Defendant] will indemnify . . . [Plaintiff] . . . from and against . . . any and all claims, obligations, liabilities, damages, losses, costs and expenses . . . arising from, resulting from or relating to any breach, deficiency, inaccuracy or inadequacy."   *VSA* [#18-2] § 9.  As written and agreed to by the parties, this language does cover a broad spectrum of claims.  However, were Plaintiff to bring a claim

against Defendant *not* arising from a breach, deficiency, inaccuracy or inadequacy related to the Agreement, the limitation of liability provision has full effect and would preclude Plaintiff from seeking the consequential damages described in the provision. Therefore, under a plain reading, the Court is not persuaded that first-party indemnification would stifle the limitation of liability provision. *See Ravenstar, LLC*, 401 P.3d at 552; *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 685 (Colo. 1989) (noting the "well-settled principle of law . . . that courts will not rewrite a contract for the parties").

Having determined that the VSA permits first-party indemnification claims while giving both the limitation of liability and indemnification provisions full force, the Court recommends that the Motion [#11] be **denied** to the extent that it seeks to dismiss Plaintiff's indemnification claim on the grounds that the claim is precluded by the VSA.

### IV. Conclusion

Accordingly, for the reasons stated above, IT IS HEREBY **RECOMMENDED** that the Motion [#11] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review

-15-

by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge